UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                                     :
UNITED STATES OF AMERICA
                                                                     :
          - v. -                                    16 Cr. 483 (JSR)
                                                                     :
STEFAN LUMIERE,
                                                                     :
                    Defendant.
                                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## THE GOVERNMENT'S POST-HEARING RESPONSE
## IN FURTHER OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

PREET BHARARA
United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Ian McGinley
Damian Williams
Joshua A. Naftalis
Assistant United States Attorneys
          – Of Counsel –



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 8, 2016

BY CM/ECF & HAND DELIVERY

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1340
New York, New York 10007

    Re:  <u>United States</u> v. <u>Stefan Lumiere</u>,
       16 Cr. 483 (JSR)

Dear Judge Rakoff:

   The Government respectfully submits this letter in further opposition to the defendant's motion to suppress the electronic evidence seized from his apartment on February 26, 2014 (the "Electronic Evidence"). As set forth below, the defendant's October 27, 2016 post-hearing brief misstates the facts, ignores the applicable law, and makes clear that the motion — even as it has continued to morph — is without merit.

   A.  <u>*United States* v. *Metter*</u>

   On August 30, 2016, the defendant moved to suppress the Electronic Evidence. (Aug. 8, 2016 Def. Mem. 13-17). The sole basis for this motion was defense counsel's speculation that the Government had not reviewed the Electronic Evidence, relying on a 2012 case from the Eastern District of New York, *United States* v. *Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012); (*see* Aug. 8, 2016 Def. Mem. 16 ("The rationale for suppression in *Metter* applies here with even greater force because the government has held on to Lumiere's electronic data for approximately 30 months . . . and apparently has not reviewed the electronic data — as it had promised to do.")).

   At the October 19, 2016 evidentiary hearing, Special Agent Callahan testified that, consistent with the February 25, 2014 search warrant (the "Search Warrant"), he had reviewed the Electronic Evidence between approximately February 26, 2014 and late March 2014. (Oct. 19, 2016 Tr. ("Tr.") 6-9; *see also id.* at 41 (The Court: "I agree with you there is evidence from the agent that the vast bulk of this was looked at promptly, which eliminates the argument based on the Eastern District case . . . *Metter*.")).[1] Tellingly, in his latest submission, the defendant does not

---

[1]  The one exception was the Apple iPad. Special Agent Callahan testified that he later received the password for the iPad, but did not review the iPad because, acting in good faith, he was focused on "other investigation steps that took up the time," and "[w]e were in a cooperative posture with Mr. Lumiere at the time." (Tr. 10, 22-25). In its October 20, 2016 letter, the

even attempt to defend his prior claim that the Electronic Evidence should be suppressed under a *Metter* analysis, nor could he.

B.     *United States* v. *Ganias*

Instead, the defendant now raises a new argument:  that the FBI "acted in bad faith and violated Lumiere's Fourth Amendment right to be free from unreasonable searches and his right to privacy by failing in any meaningful way to segregate responsive files from non-responsive files." (Oct. 28, 2016 Ltr. 2).  Like his now-abandoned *Metter* claim, this claim is meritless.  At the evidentiary hearing, Special Agent Callahan testified that he reviewed the Electronic Evidence for "[e]vidence responsive to the warrant" by "manually going through file folders, looking for documents and other recordings in evidence," and going "through the individual file folders one by one." (Tr. 7).  These are some of the very techniques that the Search Warrant explicitly says an agent "may use" in reviewing electronic evidence.  (*See* Oct. 27, 2016 Creizman Decl., Ex. 3, at ¶ 12 ("In conducting this review, law enforcement personnel may use various techniques to determine which files or ESI contain evidence of fruits of the Subject Offenses," including "surveying various file directories or folders and the individual files they contain," and "conducting a file-by-file review by 'opening' or reading the first few 'pages' of such files in order to determine their precise contents")).  Special Agent Callahan further testified that he was able to identify evidence responsive to the warrant following these techniques and FBI protocol.  (Tr. 14, 17-20).

Contrary to the defendant's suggestion, nothing in the Search Warrant requires the Government to "segregate responsive files from non-responsive files" or to "purge non-responsive files." (Oct. 28, 2016 Ltr. 2).  Indeed, the Second Circuit in *United States* v. *Ganias*, sitting *en banc*, made clear that there is a distinction between electronic evidence and hard copy evidence, and how the Government necessarily must handle those distinct types of evidence.  *See generally* 824 F.3d 199 (2d Cir. 2016) (*en banc*).  The Court dismissed the so-called "file cabinet analogy" — which Lumiere is advancing — as "an imperfect one." *Id.* at 212.  The Court explained:

> Though to a user a hard drive may seem like a file cabinet, a digital forensics expert reasonably perceives the hard drive simply as a coherent physical storage medium for digital data — data that is interspersed throughout the medium, which itself must be maintained and accessed with care, lest this data be altered or destroyed.

*Id.*  The Court continued:  "'Files,' in short, are not as discrete as they may appear to a user.  Their interspersion throughout a digital storage medium, moreover, may affect the degree to which it is feasible, in a case involving search pursuant to a warrant, to fully extract and segregate responsive dates from non-responsive data." *Id.* at 213; *see also id.* at 215 ("Preservation of the original medium or a complete mirror may therefore be necessary in order to safeguard the integrity of evidence that has been lawfully obtained or to authenticate it at trial."); Fed. R. Crim. P.

_____

Government made clear that it "does not intend to review the Apple iPad; the Government will return the device to the defendant and will discard the forensic copies of it."

41(e)(2)(B) & advisory committee's note to 2009 amendments (distinguishing the handling of electronically stored evidence).[2]  Because Special Agent Callahan's search complied fully with the Search Warrant, wholesale suppression is inappropriate.  *See*, *e.g.*, *United States* v. *Matias*, 836 F.2d 744, 747-48 (2d Cir. 1988) ("Courts have also indicated that the drastic remedy of the suppression of *all* evidence seized is not justified unless those executing the warrant acted 'in flagrant disregard' of the warrant's terms." (emphasis in original)); *United States* v. *Shi Yan Liu*, 239 F.3d 238, 140 (2d Cir. 2000) (same).

What is more, the defendant ignores that, in the more than two years since the Search Warrant was executed, he has never made a motion for the return of the Electronic Evidence, pursuant to Federal Rule of Criminal Procedure 41(g).  *See Ganias*, 824 F.3d at 218-19 ("Rule 41(g) thus provides a potential mechanism, in at least some contexts, for dealing with the question of retention at a time when the government may be expected to have greater information about the data it seeks and the best process through which to search and present that data in court."); Fed. R. Crim. P. 41(e)(2)(B) advisory committee's note to 2009 amendments ("Rule 41(g) already provides a process for the 'person aggrieved' to seek an order from the court for a return of the property").

Finally, as the record makes clear, Special Agent Callahan acted in good faith by promptly reviewing the Electronic Evidence for responsive material consistent with the Search Warrant and the Circuit's guidance in *Ganias*.  Accordingly, suppression of the Electronic Evidence is an inappropriate remedy even if there were a Fourth Amendment violation (and, for the reasons stated above, there was not).  *See*, *e.g.*, *Ganias*, 824 F.3d at 221-26) (affirming denial of suppression motion because agent's good faith reliance on warrant was objectively reasonable); *United States* v. *Leon*, 468 U.S. 897, 922 (1984) (holding that suppression not warranted when Government acts "in objectively reasonable reliance" on a search warrant); *United States* v. *Clark*, 638 F.3d 89, 100 (2d Cir. 2011) ("[I]n *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection.").

C.    Potentially Privileged Material

Faced with the failure of his *Metter* arguments and largely ignoring the Second Circuit's guidance in *Ganias*, the defendant also advances a third argument:  that the Electronic Evidence "as well as *all* evidence obtained from the electronic devices voluntarily provided to the government by Lumiere's then-attorney, Jeffrey Udell" should be suppressed because the Government allegedly reviewed both sets of electronic devices "without any regard for privileged communications."  (Oct. 27, 2016 Ltr. 1, 5-6 (emphasis in original)).  This argument is frivolous.

As the Court will recall, the Electronic Evidence was seized from the defendant's apartment on February 26, 2014.  After discussions with Lumiere's then-counsel, Mr. Udell, the defendant *voluntarily* turned over certain other electronic evidence, *consented* to their search, and *waived* the suppression argument he is now pursuing (the "Additional Evidence").  Included on this Additional Evidence were recordings that the defendant made while he worked at Visium.

---

[2]    The one case that the defendant cites, *United States* v. *Debbi*, 244 F. Supp. 2d 235 (S.D.N.Y. 2003), is inapposite because it dealt with hard copy documents, not electronic evidence.

Some of the recordings demonstrate Lumiere's knowledge of and participation in the scheme to mismark securities, and the Government intends to offer those recordings at trial. Thus, the Electronic Evidence must be distinguished from Additional Evidence — not elided as the defendant misleadingly attempts to do. Accordingly, the Government discusses each category of evidence in turn.

      1.    <u>The Electronic Evidence</u>

As the Government's October 20, 2016 letter made clear: "[T]he Government is not presently aware of any potentially privileged attorney-client communications contained on the [E]lectronic [E]vidence." (Oct. 20, 2016 Ltr. 1). The defendant's new argument appears to be that because of communications in April 2014 about potentially privileged materials — about which the Assistant United States Attorneys who are currently handling this investigation were previously unaware — Special Agent Callahan's *prior* search of the Electronic Evidence was somehow improper. This makes no sense. Special Agent Callahan testified that he reviewed the Electronic Evidence between approximately February 26, 2014 and later March 2014. (Tr. 6-9). Thus, the fact that Mr. Udell may have alerted a prior AUSA to the possible presence of privileged material *after* the search of the Electronic Evidence had occurred is irrelevant to the previous good faith review conducted by Special Agent Callahan. (*See* Tr. 33-34 (The Court: "I don't think that there is a basis yet for any motion related to [privileged communications]. . . . I think that on the present basis, you have established, at least in the witness's memory, that there were no conversations that he can recall with the one attorney he knew was the attorney.")).[3] In any event, as the Government has made clear, if during the course of the Government's preparation for trial and review of the electronic evidence, it becomes aware of potentially privileged communications on the Electronic Evidence, the Government will confer with defense counsel and will use a "wall" protocol. (*See id.*). On these facts, there is no basis to suppress the Electronic Evidence.[4]

      2.    <u>The Additional Evidence</u>

The defendant's request that the Court suppress the Additional Evidence is odd in numerous respects. *First*, the defendant appears to suggest that suppression of the Additional Evidence is somehow appropriate because his counsel may have voluntarily provided potentially privileged materials to the Government, rather than conducting his own privilege review before providing the materials in the first instance. Indeed, to the Government's knowledge, none of Mr. Lumiere's counsel have identified potentially privileged material on the Additional Evidence.

---

[3]    Similarly, Lumiere's reliance on a recording that references a lawyer does nothing to undercut Special Agent Callahan's prior good faith review of the Electronic Evidence. (Oct. 27, 2016 Ltr. 6).

[4]    Lumiere also speculates that the Government relied on privileged communications, including a document that purportedly contained "annotations [that] reflected Lumiere's thoughts and questions" to a certain lawyer identified as "Lawyer A," in presenting its case to the grand jury. (Oct. 27, 2016 Ltr. 5). Of course, the undersigned AUSAs — who presented this case to the Grand Jury — could not have relied upon privileged material in seeking an indictment against Lumiere because, as previously stated, the Government was not aware of any such privileged material.

*Second*, the defendant specifically waived his right to suppress any evidence on the Additional Evidence.  (*See* Oct. 27, 2018 Udell Decl., Ex. B, at 2).  The waiver form thus provided:

> Stefan Lumiere, after having fully consulted with his counsel, Jeffrey Udell, Esq., acknowledges that he is consenting to allow FBI Special Agents to conduct a complete search of the Subject Property, and that this consent is being given voluntarily and with the understanding and agreement that he shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that any information contained in the Subject Property, or any leads therefrom, should be suppressed, except to the extent that the Subject Property contains information subject to the protections of the attorney-client privilege.

(*Id.*).  The defendant surprisingly fails to explain how suppression is warranted despite this knowing and voluntary waiver, and identifies no particular allegedly-privileged material that falls within the exception set forth above.

*Third*, the defendant's initial motion to suppress did not even mention the Additional Evidence.  Indeed, he recently admitted that he has no basis to move to suppress the Additional Evidence.  In his September 16, 2016 letter, the defendant stated:  "Mr. Lumiere is unable to argue, under *United States* v. *Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), that recordings voluntarily provided by Lumiere's then-attorney should be suppressed."  (Sept. 16, 2016 Ltr. 1).

Thus, on these facts, there is no basis to suppress the Additional Evidence.

D.   Conclusion

For the above reasons, the Court should deny the defendant's motion to suppress.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: ___/s/_____
Ian McGinley
Damian Williams
Joshua A. Naftalis
Assistant United States Attorneys
(212) 637-2257 / 2298 / 2310

cc:   Eric Creizman, Esq.
      (by CM/ECF & e-mail)