# EXHIBIT A

# CREIZMAN LLC

565 Fifth Avenue 7th Floor
New York, New York 10017
tel: (212) 972-0200
fax: (646) 200-5022
ecreiz@creizmanllc.com
www.creizmanllc.com

*By First Class Mail*

December 27, 2016

Leslie R. Caldwell
Assistant Attorney General
United Stated Department of Justice
Criminal Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

**Re:  *United States v. Stefan Lumiere,* 16-CR-769 (JSR) (SDNY)**

Dear Assistant Attorney General Caldwell:

I represent Stefan Lumiere in the above-referenced criminal case, in which the trial is scheduled to begin on January 11, 2017 in the United States District Court for the Southern District of New York before the Honorable Jed S. Rakoff.

This letter constitutes a formal demand by Mr. Lumiere for the Department of Justice to permit a Special Agent of the Federal Bureau of Investigation, Matthew T. Callahan, to be called as a witness during Mr. Lumiere's case at trial. This application is made pursuant to the so-called "*Touhy* regulations" (*see United States ex re. Touhy v. Regan,* 340 U.S. 462 (1951)) codified at 28 C.F.R. §§ 16.21-16.26. Under the *Touhy* regulations, employees of the Department of Justice are authorized, after consultation with you, to "reveal and furnish to any person . . . such testimony, and relevant unclassified material, documents, or information secured by any attorney or investigator of the Department of Justice." 28 C.F.R. § 16.23(a). The regulations require a party to provide "a summary of the testimony sought and its relevance to the proceeding, [] to the responsible U.S. Attorney." Consequently, we are providing a copy of this application to the United States Attorney for the Southern District of New York, Preet Bharara, as well as the Assistant United States Attorneys prosecuting the criminal case.

Mr. Lumiere is charged with conspiracy to commit securities fraud and mail fraud, as well as with one count of securities fraud and one count of mail fraud, in connection with an alleged scheme to misrepresent the value and the liquidity of certain securities held by a hedge fund to its investors. Special Agent Callahan has been the lead case agent in the investigation and prosecution of Mr. Lumiere since at least February 25, 2014, when he submitted a 31-page sworn statement in support of his application for search warrants of: (i) Mr. Lumiere's residence; (ii) a bank safety deposit box associated with Mr. Lumiere; and (iii) Mr. Lumiere's Bloomberg email and message account.

NEW YORK          WHITE PLAINS

Assistant Attorney General Leslie R. Caldwell
December 27, 2016
Page 2

Special Agent Callahan executed the warrant at approximately 6 a.m. on February 25, 2014 and seized three computers, seven electronic storage devices, a tablet, an iPhone, an appointment book, notebooks, notepads, and loose papers, along with other electronic devices. According to Special Agent Callahan's written FD-302 report concerning the search, Mr. Lumiere was "cooperative" during the search, and when Special Agent Callahan and another Special Agent later returned to the apartment to ask Mr. Lumiere for the key to his safety deposit box, Mr. Lumiere provided them with the key.

According to Special Agent Callahan's testimony at a suppression hearing in this case, he "personally" reviewed the seized evidence by, among other things, "manually going through file fodders, looking for documents and other recordings in evidence." Based on our review of FBI FD-302 memoranda of interviews witnesses produced by the government to date, Special Agent Callahan was present for most, if not all, relevant witness interviews and proffer sessions, and authored most, if not all, of the memoranda of interviews. Special Agent Callahan also was present for an interview of Mr. Lumiere pursuant to a proffer agreement in March 2014, and was the author of the FBI 302 memorandum of that interview.

We wish to subpoena Special Agent Callahan to testify during Mr. Lumiere's defense case.

Summary of Expected Oral Testimony

Special Agent Callahan would be expected to testify that he prepared the sworn application for the search warrant for Mr. Lumiere's residence and safety deposit box, in large part based on information provided to him by a cooperating witness and based on statements made by Mr. Lumiere to the cooperating witness that the cooperating witness surreptitiously recorded. Special Agent Callahan would be expected to testify as to the evidence that he actually recovered from the execution of the warrant, including the content of the recordings seized by the government.

Such testimony is both relevant and necessary to the defense of this case. For example, Special Agent Callahan would be expected to testify that the majority of the seized recordings did not pertain to the alleged offense conduct, thus refuting the government's likely argument to the jury, or any inference the jury might draw without such testimony, that Mr. Lumiere's decision to record those conversations reflected his consciousness of guilt. In addition, the nature of the evidence actually seized under the warrant will provide context to Mr. Lumiere's recorded statements to the cooperating witness that we believe will undermine the government's likely assertion to the jury, or any inference the jury might draw without such testimony, that certain of Mr. Lumiere's statements to the cooperating witness reflected his consciousness of guilt or were otherwise incriminating.

Special Agent Callahan also would be expected to testify about Mr. Lumiere's demeanor and cooperative behavior during the execution of the search warrant. In addition, he would also be expected to testify that within three weeks of the execution of the search warrant, Mr. Lumiere voluntarily met with representatives of the government, pursuant to a proffer agreement, and attempted to demonstrate that he did not knowingly

Assistant Attorney General Leslie R. Caldwell
December 27, 2016
Page 3

engage in wrongdoing.  In addition, Special Agent Callahan would be expected to testify that during that interview, Mr. Lumiere voluntarily identified for the government certain electronic storage devices containing relevant evidence that the government overlooked or otherwise failed to seize during the execution of the warrant.  Special Agent Callahan would be expected to testify that Mr. Lumiere provided those electronic storage devices within a few days of the interview and that he consented to the search of those devices. All of this testimony provides evidence that we believe will undermine the government's proof of *mens rea*.

Special Agent Callahan also would be expected to testify that his notes and typewritten reports contain his contemporaneous recollections of what the government witnesses he had interviewed said.  As discussed above, some of these notes and reports have been produced to defense counsel as 3500 material.  We expect that one or more witnesses may testify in a manner that is contradicted by their prior statements such that Special Agent Callahan's understanding of what he was previously told will be admissible as prior inconsistent statements pursuant to Fed. R. Evid. 613.  In addition, the government has provided defense counsel with notes and memoranda of interviews it conducted of an individual, now deceased, whom the government asserts was a co-conspirator of Mr. Lumiere's.  The government is likely to seek to introduce communications involving that now-deceased co-conspirator against Mr. Lumiere under Fed. R. Evid. 801(d)(2)(E).  We intend to introduce Special Agent Callahan's testimony about prior inconsistent statements made by that now-deceased co-conspirator or statements that otherwise undermine his credibility during the interviews Special Agent Callahan conducted of that individual.

Argument

For the reasons outlined above, the expected testimony of Special Agent Callahan is both relevant and material to the defense.  Mr. Lumiere maintains that his Sixth Amendment right to compulsory process provides him with the right to call Special Agent Callahan as a witness at trial.

If the government denies this application, we will move to dismiss the indictment, or, in the alternative, for an order directing the production of the witness notwithstanding the DOJ's position.  In a criminal case, "the Government can invoke its evidentiary privileges only at the price of letting the defendant go free." *United States v. Reynolds*, 345 U.S. 1, 12 (1953).  "The rationale for this difference, the Court said, was that in criminal cases 'the Government which prosecutes an accused also has the duty to see that justice is done'; thus, 'it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.' Id." *United States v. Fuentes-Correa*, 2013 U.S. Dist. LEXIS 21172 *21 (D.P.R Feb. 13, 2013) ("once a defendant follows the *Touhy* procedures, a court may compel attendance or production even if the Government refuses it.") *See Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998).

Although we have provided a summary of the agent's expected testimony, other matters may develop that will make other subjects relevant and material as the trial progresses.  The regulations' requirement that the defendant must disclose, in advance, a

Assistant Attorney General Leslie R. Caldwell
December 27, 2016
Page 4

summary of the witness's testimony violates due process. *See, e.g., United States v. Bahamonde*, 445 F.3d 1225, 1229 (9th Cir. 2006).

For the purposes of complying with 28 C.F.R. § 16.23(c), I declare, pursuant to 28 U.S.C. § 1728, that the summary of the testimony sought is a true and correct summary of the testimony of Special Agent Callahan that we expect to elicit at trial.

Based on my communications with Assistant United States Attorneys Ian McGinley, Damian Williams, and Joshua Naftalis, I understand that Special Agent Callahan currently is employed by the FBI, is working in the New York metropolitan area, and is aware that the defense seeks to call him as a witness at trial.

Very truly yours,

Eric M. Creizman

cc: The Honorable Preet Bharara (by first class mail)
United States Attorney for the
Southern District of New York

Ian McGinley, Esq.    (by email)
Damian Williams, Esq.
Joshua Naftalis, Esq.
Assistant United States Attorneys