UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

                                                          :

UNITED STATES OF AMERICA

                                                          :

      - v. -                                          16 Cr. 483 (JSR)

                                                          :

STEFAN LUMIERE,

                                                          :

           Defendant.

                                                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO
VACATE JUDGEMENT AND GRANT A NEW TRIAL**

PREET BHARARA
United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007


Ian McGinley
Damian Williams
Joshua A. Naftalis
Assistant United States Attorneys
    – Of Counsel –

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................1

I.     APPLICABLE RULE 33 LEGAL STANDARD ....................................................1

II.    THE COURT PROPERLY APPLIED RULE 106 ..................................................2

    A.    Applicable Law ....................................................................................... 2

    B.    Discussion ............................................................................................... 4

III.    THORELL'S TESTIMONY WAS PROPER.........................................................5

    A.    Applicable Law .......................................................................................5

    B.    Discussion ................................................................................................8

        1.    Thorell's Understanding of What Lumiere Said Was Admissible ............8

        2.    The Recording of the Defendant
             Discussing Extortion Was Admissible.......................................11

IV.    THE COURT PROPERLY ADMITTED THORELL'S
    OUT-OF-COURT, CO-CONSPIRATOR STATEMENTS ...............................13

    A.    Applicable Law.......................................................................................13

    B.    Discussion ..............................................................................................14

V.    THE GOVERNMENT'S REBUTTAL SUMMATION WAS PROPER........................16

    A.    Applicable Law.......................................................................................16

    B.    Discussion ..............................................................................................18

VI.    THE COURT CORRECTLY INSTRUCTED
    THE JURY ON CONSCIOUS AVOIDANCE ...............................................20

    A.    Applicable Law.......................................................................................20

    B.    Discussion ..............................................................................................22

CONCLUSION................................................................................................................25

The Government respectfully submits this memorandum of law in opposition to the defendant Stefan Lumiere's motion for a judgment of acquittal or a new trial, pursuant to Federal Rule of Criminal Procedure 33.  In his motion, the defendant claims that he has met his high burden of demonstrating the "essential unfairness" of his trial by raising five basic arguments:  (a) the Court erred by excluding a recorded conversation between the defendant and Jason Thorell, pursuant to Federal Rule of Evidence 106 (Br. 3-9); (b) the Court erred by not excluding various portions of Thorell's testimony, pursuant Federal Rules of Evidence 403, 404(b), and 701 (Br. 11-19); (c) the Court erred by admitting Thorell's out-of-court, co-conspirator statements, pursuant to Federal Rule of Evidence 801(d)(2)(E) (Br. 23-24); (d) the Government's rebuttal summation misrepresented certain facts (Br. 9-11); and (e) the Court erred by including a conscious avoidance instruction (Br. 19-23).  Each of these arguments — which were almost uniformly never raised at trial — is meritless.  The defendant is not entitled to a judgment of acquittal or a new trial.

## ARGUMENT

## POINT I

## APPLICABLE RULE 33 LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A new trial should be ordered "[s]paringly and in the most extraordinary circumstances."  *United States* v. *Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001); *Romero* v. *United States*, 28 F.3d 267, 268 (2d Cir. 1994).  Because "motions for a new trial are disfavored in this Circuit," *United States* v. *Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), district courts, after examining the totality of the evidence and considering objectively all of the facts and circumstances, should grant the motion only if the court finds "a real concern that an innocent person may have been convicted."  *United States* v. *Sanchez*,

969 F.2d 1409, 1414 (2d Cir. 1992).  "It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interests of justice.'"  *Id.*

None of the arguments that the defendant advances either separately or taken together meet this high burden.  The evidence overwhelmingly established that Stefan Lumiere engaged in a years' long securities mismarking scheme, and there is certainly no "concern that an innocent person may have been convicted."  As set forth below, the defendant's arguments each fail.[1]

## POINT II

## THE COURT PROPERLY APPLIED RULE 106

The defendant contends that the Court erred by excluding hearsay statements made by the defendant during a recorded conversation with Jason Thorell, pursuant to Federal Rule of Evidence 106 — including statements that trial counsel did not even seek to offer.  (Br. 4-9).  The defendant is wrong.

### A.    Applicable Law

Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, a defendant's out-of-court statement is not hearsay when offered by the Government.  Fed. R. Evid. 801(d)(2)(A) ("A statement is not hearsay if . . . [it] is offered against a party and is the party's own statement."); *see also*, *e.g.*, *United States* v. *Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("[U]nder Rule 801(d)(2)(A)," a defendant's statement offered by the 70 Government "is not hearsay, because it is simply a statement of the opposing party.").  The defendant, however, does not have a parallel ability to

---

[1]    While intimating repeatedly during conferences with the Court that he intended to argue that trial counsel was ineffective, the defendant does not appear to be advancing such arguments. The only hint of such an argument is a footnote in his brief (Br. 1 n.1), which in turn cites a footnote in the Second Circuit's decision in *United States* v. *Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010).  To the extent such arguments are even properly raised on a Rule 33 motion, the defendant has done nothing to meet this burden either.

offer his own statement into evidence. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States* v. *Marin*, 669 F.2d at 84; *see also United States* v. *Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted").

Notwithstanding the hearsay bar, a defendant may in some circumstances invoke the "rule of completeness" to require the introduction of additional portions of his own out-of-court statement when the Government offers excerpts of it. *See* Fed. R. Evid. 106. "Under this principle, even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States* v. *Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States* v. *Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)); *see also United States* v. *Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (same).

"'The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.'" *United States* v. *Johnson*, 507 F.3d at 796 (quoting *United States* v. *Jackson*, 180 F.3d at 73). This rule is strictly applied, leading the Second Court to hold, for example, that a defendant could not introduce a portion of his confession relating "to the execution of a robbery," where the portion introduced by the Government concerned only "plans to execute the robbery." *Johnson*, 507 F.3d at 796. Ultimately, the burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the Government intends to offer. *United States* v. *Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional

evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

As with any evidentiary ruling, a "trial court's application of the rule of completeness is reviewed for abuse of discretion." *Johnson*, 507 F.3d at 796; *see also United States* v. *Lyttle*, 460 F. App'x 3, 7 (2d Cir. 2012) (district court's Rule 106 determination will not be reversed unless it is "manifestly erroneous."). Moreover, even if the trial court has abused its discretion in admitting or excluding evidence, there is no remedy for an error that is harmless. *See* Fed. R. Crim. P. 52(a).

## B.    Discussion

At trial, the Government offered four brief excerpts from a recording that Jason Thorell made during a lengthy meeting with the defendant, including additional portions requested by the defendant and ordered by the Court, pursuant to Federal Rule of Evidence 106. (GX 1224-A, GX 1226-A, GX 1234-A, 1238-A; Tr. 232-35). The Court also limited the Government from offering another excerpt, pursuant to Rule 106. (Tr. 265-74, 312). The defendant now claims that the Court erred by precluding admission of other excerpts that trial counsel sought to offer. He also argues that the Court should have admitted the multi-hour recording "in its entirety" — even though defense counsel never sought to offer it. (Br. 4-9). These claims are meritless.

At bottom, the defendant's complaint is that the Court should have permitted him to offer self-serving, purported exculpatory statements. But is well established that a district court does not abuse its discretion when it refuses, pursuant to Rule 106, to admit such justifications by a defendant of his conduct or explanations of his motives. *See Jackson*, 180 F.3d at 73 (affirming district court's ruling that Rule 106 did not justify admission of defendant's "own self-serving statements"); *United States* v. *Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) ("Removing

[defendant's] explanation of the religious and political motivations for his actions did not change the meaning of the portions of his confession submitted to the jury.  The redaction did not alter the fact that he admitted committing the acts with which he was charged.").

What is more, none of the "excluded" portions of the testimony support the defendant's fictional claim that he "did not come to understand until near the end of his tenure at Visium that Plaford's valuation was not credible."  (Br. 4).  This is lawyer's argument, nothing more.

Accordingly, the Court properly applied Rule 106.

## POINT III

## THORELL'S TESTIMONY WAS PROPER

The defendant also maintains that the Court erred by admitting various testimony from Jason Thorell, pursuant to Federal Rules of Evidence 403, 404(b), and 701.  (Br. 11-19).  These arguments should be rejected as well.

**A.      Applicable Law**

**1.      Federal Rules of Evidence 401, 402, and 403.**

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Federal Rule of Evidence 402, in turn, provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."

Federal Rule of Evidence 403 states, in relevant part, that "[a]lthough relevant, evidence may be excluded only if its probative value is *substantially* outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."   (Emphasis added.) Evidence is not excludable, however, simply because it is "prejudicial."   As the Second Circuit has explained:

> To be sure, all evidence incriminating a defendant is, in one sense of the term, "prejudicial" to him:  that is, it does harm to him.  In that sense, the more pertinent evidence is, the more prejudicial it is.  What "prejudice" as used in Rule 403 means is that the admission is, as the rule itself literally requires, "unfair" rather than "harmful."

*United States* v. *Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986).  *See also Oregon* v. *Kennedy*, 456 U.S. 667, 674 (1982) ("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt"); *United States* v. *Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ("The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" (quoting *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980))); *United States* v. *Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) (same); Fed. R. Evid 403 advisory committee's note (unfair prejudice means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").  The "fact that evidence may be 'damning' does not render it inadmissible." *United States* v. *Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (citing *United States* v. *Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972)).

Accordingly, to exclude such evidence as unfairly prejudicial, a defendant must be able to identify "some adverse effect beyond tending to prove the fact or issue that justifies admission of the evidence." *Perry* v. *Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997).  Rule 403 does not require the exclusion of evidence of other bad acts which "involve[d] conduct [no] more sensational or disturbing than the crimes with which [the defendant] was charged." *United*

*States* v. *Roldan- Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). *See also United States* v. *Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence).

      **2.**     **Federal Rule of Evidence 404(b).**

      Rule 404(b) of the Federal Rules of Evidence prohibits admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." The Rule expressly allows such evidence to be admitted, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

      However, evidence of "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." *United States* v. *Concepcion,* 983 F.2d 369, 392 (2d Cir. 1992). Indeed, the Second Circuit has repeatedly held that actions and statements are admissible as direct evidence of the crimes charged and are "not considered other crimes evidence under Fed. R. Evid. 404(b)" if (1) they "arose out of the same transaction or series of transactions as the charged offense," (2) they are "inextricably intertwined with the evidence regarding the charged offense," or (3) they are "necessary to complete the story of the crime on trial." *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citing *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)); *see also United States* v. *Guang*, 511 F.3d 110, 121 (2d Cir. 2007); *United States* v. *Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States* v. *Baez*, 349 F.3d 90, 94 (2d Cir. 2003).

      Moreover, this Court has stated that evidence is "not other-act evidence within the meaning of Rule 404(b)" if it was "admissible to prove material facts other than [the defendant's]

propensity to commit a crime." *United States* v. *Concepcion*, 983 F.2d at 392.  Direct evidence is "not confined to that which directly establishes an element of the crime."  *United States* v. *Gonzalez*, 110 F.3d at 941.  As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency."  *Id.*; *accord United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991).

The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b)," which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity.  *United States* v. *LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004); *see also United States* v. *Cadet*, 664 F.3d 27, 32 (2d Cir. 2011); *United States* v. *McCallum*, 584 F.3d 471, 474-75 (2d Cir. 2009).

**B.      Discussion**

**1.      Thorell's Understanding of What Lumiere Said Was Admissible**

The defendant first argues that the Court erred in permitting Thorell to testify about his understanding of what the defendant meant during an in-person conversation with him — testimony to which trial counsel did not object.  Specifically, he contends that (a) Thorell offered impermissible lay opinion testimony, under Federal Rule of Evidence 701, and (b) Thorell's testimony should have been excluded, under Federal Rule of Evidence 403.  (Br. 11-15).  These claims are frivolous.

During direct examination, the Government offered and played a recording of a conversation between Thorell and the defendant.  (GX 1234-A[2]; Tr. 237-238).  On this recording, the defendant said, among other things, that "Chris has been mismarking shit egregiously since the

---

[2]      As the Court will recall, GX 1223-A was relabeled GX 1234-A to include the portion that the defendant had offered and that the Court ordered be included under Rule 106.

beginning. . . . Originally in 2011.  He was marking them too low . . . . So he's been doing that since the beginning.  He's been mismarking shit egregiously — outside context of what was right from the beginning," including ATI and ChinaMed, "which were just egregious."  (GX 1234-A). Thorell testified that "Chris" was Chris Plaford, the portfolio manager of the Visium Credit Fund, for whom Thorell worked as a credit trader.  (Tr. 237).  After referencing the defendant's statements, quoted above, the Government asked the following questions and Thorell gave the following testimony:

> Q:       So who was mismarking since 2011 and who was egregiously mismarking?  What does Lumiere say?
>
> THORELL:   Lumiere states that Chris Plaford was.
>
> Q:       Was it just Chris Plaford who was egregiously mismarking things since 2011?
>
> THORELL:   No, it was not.
>
> Q:       Who else was doing it since 2011?
>
> THORELL:   Stefan.
>
> Q:       When you spoke to Mr. Lumiere and he used the word "Chris did this," what did you understand him to mean?
>
> THORELL:   I understood him to mean that, in the context of this transcript, that he's speaking for Chris, but also himself.

(Tr. 238).

The defendant claims, without basis, that this line of questioning lacked foundation and constituted impermissible lay opinion testimony.  Federal Rule of Evidence 701(a) provides that "testimony in the form of an opinion" is permitted if it "is limited to one that is:  (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony

- 9 -

or to determining a fact in issue." Fed. R. Evid. 701. "As the advisory committee's notes explain, the first prong requires that a witness meet 'the familiar requirement of first-hand knowledge or observation.'" *United States* v. *Urlacher*, 979 F.2d 935, 939 (2d Cir. 1992) (quoting Fed. R. Evid. 701 advisory committee's note). "The second prong requires that the testimony be helpful to the jury's clear understanding of the witness's testimony." *Id.*

Consistent with these principles, the Second Circuit has repeatedly held that a first-hand participant in a conversation may testify about his or her understanding of statements made during the conversation, and that such testimony is helpful to the jury's understanding of such conversations. *See*, *e.g.*, *United States* v. *Urlacher*, 979 F.2d at 939 (holding that witness's interpretation of comments made by defendant during taped conversations was admissible); *accord United States* v. *Rowland*, 826 F.3d 100, 114 (2d Cir. 2016); *United States* v. *Garcia*, 291 F.3d 127, 140-41 (2d Cir. 2002); *United States* v. *Salazar*, 112 F.3d 506 (2d Cir. 1997) (table). In particular, where the language in a recorded conversation "is sharp and abbreviated, composed with unfinished sentences and ambiguous references to events that are clear only to the conversants," a participant in the conversation may testify as to his understanding of any ambiguous statements. *Urlacher*, 979 F.2d at 939. Accordingly, the Court properly permitted Thorell to testify about his understanding of what the defendant said to him during their in-person conversation.

The defendant also argues that Thorell's testimony about his understanding of what the defendant had said was inadmissible under Rule 403. (Br. 15). This claim fails for much the same reason his lay opinion challenge fails. Thorell testified at length that he mismarked securities with Plaford and the defendant. Thus, his testimony reflecting his first-hand understanding of what the defendant meant was certainly relevant, and its probative value as not *substantially*

outweighed by the danger of unfair prejudice.  *See United States* v. *Jimenez*, 789 F.2d at 171 ("To

be sure, all evidence incriminating a defendant is, in one sense of the term, "prejudicial" to him:

that is, it does harm to him.  In that sense, the more pertinent evidence is, the more prejudicial it

is.  What "prejudice" as used in Rule 403 means is that the admission is, as the rule itself literally

requires, "unfair" rather than "harmful.").

### 2.    The Recording of the Defendant Discussing Extortion Was Admissible

The defendant also argues that the Court should have precluded Lumiere's recorded

statement that he would "love" to extort Gottlieb and Plaford for "$100 million" because it ran

afoul of Rules 404(b) and 403.  (Def. Br. 15-19).  This argument fails.  Lumiere's statements about

extortion were highly relevant and were offered to rebut the defense argument, put squarely before

the jury in defense counsel's opening statement, that the defendant recorded himself because he

was innocent.  Having opened the door, Lumiere surely cannot claim that the Government was not

entitled to respond with evidence of the defendant's true motivation.

In opening statements, defense counsel made the following statement to the jury:

> A word about the recordings that Mr. Williams mentioned.  I think
> he mentioned that Mr. Lumiere — that some of the recordings that
> the government wants to introduce are to prove Mr. Lumiere's guilt,
> are recordings that Mr. Lumiere made himself.  When you listen to
> those recordings, *I urge you to think about whether it makes common
> sense to record yourself committing crimes.*

(Tr. 30 (emphasis added)).  In response, during Thorell's direct examination, the Government

briefly highlighted the portion of GX 1222-A in which Lumiere explained to Thorell that "I'd love

to be able to go get him and say, listen, Jake, Chris, give us $100 million between the both of you."

(Tr. 399; GX 1222-A).[3]  This was not propensity evidence, but classic direct evidence.

---

[3]       The defendant also claims that this recording with offered "without notice" to the
defendant.  (Br. 17).  Consistent with the Court's order, the Government turned over its exhibits
to the defense before trial, including the marked excerpt contained in GX 1222-A).

Defense counsel did not object; nor could he, given that he made the strategic judgment to advance a so-called "consciousness of innocence" defense.  To further that strategy, he drew the jury's attention to two facts: (1) that Lumiere made recordings of himself during the scheme, and (2) that Lumiere produced those recordings to the FBI before he was charged.  It is difficult to see how trial counsel could have advanced this defense without opening the door to the Government's response.  And Lumiere's post-hoc quibble with that strategy does not form the basis for a new trial.

Later, in summation, the Government explained why Lumiere's statements were important and how they answered defense counsel's suggestion that an innocent man would not record himself committing a crime:

> Lumiere was no babe in the woods.  He knew he was involved in a massive fraud.  So while he was still working at Visium, he started to put together the insurance policy.  Blackmailing people at Visium for a hundred million dollars.  Now, blackmail only works if you have something to hold over someone's head, and here the defendant had all the information in his head about the scheme — the one he was involved in.

> Now, remember that certain of these recordings were made by the defendant himself. Ask yourself, why would Lumiere record himself if he thought he was playing everything by the book?  You only tape people if you're trying to gather evidence of wrongdoing.  And here Lumiere wanted evidence so he could keep it in his back pocket and cash it in one day.  And he says exactly what he wanted — a hundred million dollars.

(Tr. 1006-07).  In the defense summation, trial counsel once again drew the jury's attention to the fact that Lumiere made recordings of himself and then produced those recordings to law enforcement.  (Tr. 1017).  He then sought to undermine the Government's explanation for this conduct by telling the jury that while evidence of blackmail was "chilling," they should nonetheless dismiss such talk as unrealistic.  (Tr. 1044 ("It's chilling, right?  Again, you have a

snippet of a conversation that the government decides to play.  You got no context.  Stefan Lumiere, really?  Was he blackmailing Jacob Gottlieb?  If the government had evidence he was blackmailing Jacob Gottlieb, what do you think would happen?  The government would play that evidence, right?")).

On this record, the defendant's claim that the Government improperly, and without notice, offered impermissible "other act" evidence is without merit.  Defense counsel notified the Government in advance of trial that it intended to advance a consciousness of innocence defense.  And, for its part, the Government provided defense counsel with ample pretrial notice that it intended to offer GX 1222-A.  There is neither surprise nor unfair prejudice at play in the admission of this plainly relevant evidence.

## POINT IV

### THE COURT PROPERLY ADMITTED THORELL'S OUT-OF-COURT, CO-CONSPIRATOR STATEMENTS

The defendant next, and oddly, contends that the Government failed to establish that Thorell was a co-conspirator in the charged scheme and that, as a result, Thorell's out-of-court statements should not have been admitted.  (Br. 23-24).  The defendant is wrong.  Numerous witnesses, including Thorell himself, as well as exhibits and recordings established that Thorell participated in the mismarking conspiracy with the defendant.  As such, the Court properly admitted Thorell's out-of-court statements made in furtherance of this conspiracy.

### A.     Applicable Law

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is "not hearsay if . . . [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  To admit a statement pursuant to this rule, a district court must find two facts by a preponderance of the evidence:  first,

that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987); *United States* v. *Gigante*, 166 F.3d 75,82 (2d Cir. 1999). It is not necessary that the declarant be formally charged as a co-defendant, nor is it even necessary that a conspiracy be charged in the indictment. *See United States* v. *Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979).

To prove a conspiracy, the Government need show only that the defendant "agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) (quoting *United States* v. *Martino*, 664 F.2d 860, 876 (2d Cir. 1981)); *see also United States* v. *Geibel*, 369 F.3d 682,689 (2d Cir. 2004); *United States* v. *Berger*, 224 F.3d 107,114 (2d Cir. 2000). Such an agreement may be inferred from a defendant's participation in the alleged enterprise and consciousness of its general nature and extent. *See United States* v. *Alessi*, 638 F.2d 466, 473 (2d Cir. 1980); *United States* v. *Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989). It is not necessary that all of the conspirators' goals were completely congruent, so long as they agreed on the essential nature of the unlawful plan and their goals were not at cross-purposes. *United States* v. *Maldonado-Rivera*, 922 F.2d at 963.

## B.     Discussion

The Government provided ample proof, certainly by a preponderance of evidence, that the defendant and Thorell were co-conspirators, starting with the testimony of Thorell himself. Thorell testified that he participated in a mismarking scheme with the defendant that he understood to be illegal. (Tr. 223-24). The defendant and Thorell also undertook acts that demonstrated their joint participation in a conspiracy. The defendant asked Thorell to find a third broker, like Brook and Vandersnow, to provide broker quotes. (Tr. 308). Thorell followed this instruction and

enlisted a third corrupt broker — Matthew O'Callaghan — in the scheme.  (Tr. 308).  The defendant also asked Thorell to call the brokers on their personal cell phones from his personal cell phone, so as to avoid their calls being recorded.  (Tr. 358-59).  And, for many months during the scheme, the defendant forwarded broker quotes to Thorell to forward to operations.  (GX 656-58).  In addition, Plaford testified that he considered the defendant and Thorell as his co-conspirators in the mismarking scheme.  (Tr. 632).  Plaford described how the defendant's role in the conspiracy was to dictate prices and solicit bogus broker quotes, while Thorell's role was to send these quotes to Visium's operations department.  (Tr. 633-34).  Vandersnow's testimony similarly established that he was in a mismarking conspiracy with Thorell and the defendant.  (Tr. 483-84, 507-08).

To support his claim that Thorell was not a co-conspirator, the defendant cherry-picks testimony, devoid of context.  For example, Thorell testified that he did not have direct evidence that the bogus quotes went to investors.  (Tr. 413).  But Thorell understood that was the logical purpose of the scheme and Thorell was unequivocal that, within months of joining the scheme, he knew he was committing a crime.  (Tr. 413, 420).  That is all that is required to form a conspiracy.  *Maldonado-Rivera*, 922 F.2d at 963.  Further, any purported inconsistency in Thorell's testimony was placed before the jury, which clearly rejected the argument advanced now that the defendant and Thorell were not co-conspirators.  Accordingly, the defendant's claim must be rejected.

- 15 -

# POINT V

## THE GOVERNMENT'S REBUTTAL SUMMATION WAS PROPER

The defendant also argues that the Government's rebuttal summation was improper because it argued that there was no evidence to support the defendant's claim that he acted in good faith.  (Br. 9-11).  This claim fails before it starts.

## A.      Applicable Law

"[A] defendant asserting that a prosecutor's remarks warrant a new trial faces a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial."  *United States* v. *Coplan*, 703 F.3d 46, 86 (2d Cir. 2012) (internal quotation omitted).  "It is well established that the Government 'has broad latitude in the inferences it may reasonably suggest to the jury during summation.'"  *Id.* at 87 (quoting *United States* v. *Edwards*, 342 F.3d 168, 181 (2d Cir. 2003)); *see also United States* v. *Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence."); *United States* v. *Caputo*, 808 F.2d 963, 968-69 (2d Cir. 1987) (citing cases after noting that "[t]his court has previously upheld the use of vigorous rebuttal by the prosecution").

Moreover, a prosecutor is "entitled to respond to the evidence, issues, and hypotheses propounded by the defense."  *United States* v. *Marrale*, 695 F.2d 658, 667 (2d Cir. 1982).  As Judge Learned Hand memorably explained:

> It is impossible to expect that a criminal trial shall be conducted
> without some show of feeling; the stakes are high, and the
> participants are inevitably charged with emotion. Courts make no
> such demand; they recognize that a jury inevitably catches this mood
> and that the truth is not likely to emerge, if the prosecution is
> confined to such detached exposition as would be appropriate in a
> lecture, while the defense is allowed those appeals in misericordiam

> which long custom has come to sanction. The question is always as
> to the particular incident challenged, in the setting of the whole trial.

*United States* v. *Wexler*, 79 F.2d 526, 529-30 (2d Cir. 1935); *see also DiCarlo* v. *United States*, 6 F.2d 364, 368 (2d Cir. 1925) (L. Hand, J.) ("While . . . we recognize that the prosecution is by custom more rigidly limited than the defense, we must decline to assimilate its position to that of either judge or jury, or to confine a prosecuting attorney to an impartial statement of the evidence. He is an advocate, and it is entirely proper for him as earnestly as he can to persuade the jury of the truth of his side, of which he ought to be thoroughly convinced before he begins at all.  To shear him of all oratorical emphasis, while leaving wide latitude to the defense, is to load the scales of justice.").

Even greater leeway is afforded in rebuttal summations, which are not fully constructed in advance and are often improvised.  *See United States* v. *Arias-Javier*, 392 F. App'x 896, 898 (2d Cir. 2010); *see also United States* v. *Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) ("Precisely because such arguments frequently require improvisation, [the Court] will not lightly infer that every remark is intended to carry its most dangerous meaning.").

Even if a defendant can meet the heavy burden of demonstrating that a prosecutor's remarks were improper, a new trial is not warranted unless he can also carry the "heavy burden" of showing that "the comment, when viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, depriving him of a fair trial." *United States* v. *Farhane*, 634 F.3d at 167; *see also United States* v. *Shareef*, 190 F.3d 71, 78 (2d Cir.1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'").

This Court uses a three-part test for "determining whether an inappropriate remark amounts to prejudicial error," consisting of "[1] the severity of the misconduct, [2] the measures

adopted to cure the misconduct, and [3] the certainty of conviction absent the misconduct." *United States* v. *Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010) (internal citation and quotation omitted). Cases in which a defendant suffers substantial prejudice are "rare," *id.*, and "arise only when improper comments so infect the trial as a whole as to result in a conviction violative of due process," *United States* v. *Bonventre*, 646 F. App'x 73, 87 (2d Cir. 2016).

**B.     Discussion**

The defendant variously alleges that the Government engaged in "clear misconduct that deprived the defendant of a fair trial" by arguing in its rebuttal summation that there was no record evidence to support the defendant's claim that he acted in good faith.  (Br. 9).  The defendant's arguments are without merit.  There no misconduct, let alone misconduct that would warrant a new trial.

As a threshold matter, the defendant completely ignores that he argued throughout the trial, during his opening statement, during his cross-examination of witnesses, and during his closing statement that he had a good faith belief in the valuation process and the valuations themselves.  For example, during his opening statement, trial counsel specifically argued:  "Let me be clear, and the evidence will show this, Mr. Lumiere believed in good faith, that those prices that he went to the brokers to confirm were accurate, reasonable and justifiable[, and] Stefan Lumiere had every reason to believe that those brokers were acting in good faith."  (Tr. 20-21). During his closing statement, trial counsel continued to press this good faith argument. (*E.g.*, Tr. 1016 ("Stefan [Lumiere] believed in the values that Chris [Plaford] set for those prices"); Tr. 1028 ("that's what Stefan Lumiere would expect because that's what he believed the prices were."); Tr. 1030 ("Stefan Lumiere believed in the prices"); Tr. 1045 ("Stefan Lumiere, who went out and got broker quotes and who believed in the pricing").

Thus, the Government's rebuttal summation simply and fairly responded to the very issue that the defendant opened on, and continued to repeat through the trial, including during his closing arguments.  That was entirely proper, as the Second Circuit has recognized.  *See United States* v. *Marrale*, 695 F.2d at 667 (a prosecutor is "entitled to respond to the evidence, issues, and hypotheses propounded by the defense").

The defendant also contends that the Government made various factual misrepresentations during rebuttal summation.  None of these claims is supported by the record.  The Government's arguments accurately reflected the evidence in the record.  Tellingly, the defendant cites no evidence for his supposed good faith other than the inadmissible portions of a recording that were never offered or received.  Moreover, all of these supposed "misrepresentations" were simply arguments or fair inferences with which defense counsel disagreed.  (*See* Tr. 1070 (The Court: "[T]he jury is well aware of the way the two sides differently interpret the recordings.")).

As this Second Circuit has repeatedly emphasized, the Government is not limited in summation or rebuttal to a pure recitation of the evidence presented.  "'The government has broad latitude in the inferences it may reasonably suggest to the jury during summation,'" *United States* v. *Zackson*, 12 F.3d 1178, 1183 (2d Cir. 1993) (quoting *United States* v. *Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989)), and is "free to make arguments which may be reasonably inferred from the evidence presented," *United States* v. *Roldan-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990) (finding no error in prosecutor's comments despite lack of direct evidence supporting them); *see also Salameh*, 152 F.3d at 138 (finding that the "government did not misrepresent" testimony where it argued an inference could be drawn regarding defendant's conduct even where there was no testimony explicitly supporting the argument, based on the "broad latitude the government is

given to suggest reasonable inferences to the jury").  None of the challenged statements here fall wide of that mark.

**POINT VI**

**THE COURT CORRECTLY INSTRUCTED THE JURY
ON CONSCIOUS AVOIDANCE**

Finally, the defendant argues that the Court erred by giving a conscious avoidance instruction.  (Br. 19-23).  This argument is easily rejected, especially given that (a) the overwhelming evidence establishing that the defendant had actual knowledge that he was engaged in a fraudulent valuation scheme, and (b) the defendant's principal defense was that he acted in good faith.

**A.      Applicable Law**

"A conscious avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact."  *United States* v. *Cuti*, 720 F.3d 453, 463 (2d Cir. 2013) (citation and internal quotation marks omitted); *see also United States* v. *Svoboda*, 347 F.3d 471, 479 (2d Cir. 2003) (in the context of a conspiracy case, "a defendant's conscious avoidance of knowledge of [the conspiracy's] illegal purpose may substitute for knowledge of the illegal purpose.").

A conscious avoidance instruction "is not inappropriate merely because the government has primarily attempted to prove that the defendant had actual knowledge, while urging in the alternative that if the defendant lacked such knowledge it was only because he had studiously sought to avoid knowing what was plain."  *United States* v. *Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995).  In fact, "the same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise an inference that the defendant was

- 20 -

subjectively aware of a high probability of the existence of illegal conduct." *Svoboda*, 347 F.3d at 480 (citation and internal quotation marks omitted).

"Red flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance." *United States* v. *Goffer*, 721 F.3d 113, 127 (2d Cir. 2013) (internal quotation marks omitted).  Thus, "the second prong [of the conscious avoidance test] may be established where a defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *Svoboda*, 347 F.3d at 480 (citation and internal quotation marks omitted).  "For example, in a securities fraud case, if a defendant attended meetings that were part of the charged scheme, yet argues that he lacked the requisite scienter because, for example, he 'didn't bother to read in full' the documents he signed, the charge is appropriate." *Cuti*, 720 F.3d at 463 (citing *United States* v. *Ebbers*, 458 F.3d 110, 124-25 (2d Cir. 2006)).  Indeed, "[i]t is not uncommon for a finding of conscious avoidance to be supported primarily by circumstantial evidence," as "the very nature of conscious avoidance makes it unlikely that the record will contain directly incriminating statements." *United States* v. *Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011).  In other words, "[a] defendant's purposeful contrivance to avoid knowledge may not manifest in an affirmative act." *United States* v. *Whitman*, 555 F. App'x 98, 105 (2d Cir. 2014) (internal quotation and citation omitted).  Accordingly, "[a] conscious-avoidance instruction is appropriate when a defendant claims to lack some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance." *United States* v. *Gabriel*, 125 F.3d 89, 98 (2d Cir. 1997) (citation and internal quotation marks omitted).

**B.     Discussion**

   The defendant mounts two challenges to the Court's conscious avoidance charges. Each is meritless.

   *First*, he argues that the Court *sua sponte* and incorrectly inserted a conscious avoidance charge.  (Br. 20).  The defendant fails to mention that the Government's proposed request to charge specifically included a conscious avoidance instruction (Dkt. 48. at 32-33), and that he failed to object to the Court's proposed charge (Tr. 960-67).

   What is more, the defendant does not address that his primary defense — previewed in his opening statement and repeated in his closing statement — was that he had a good faith belief in the valuation process and the valuations themselves.  (*E.g.*, Tr. 20-21 ("Let me be clear, and the evidence will show this, Mr. Lumiere believed in good faith, that those prices that he went to the brokers to confirm were accurate, reasonable and justifiable[, and] Stefan Lumiere had every reason to believe that those brokers were acting in good faith."); Tr. 1016 ("Stefan [Lumiere] believed in the values that Chris [Plaford] set for those prices"); Tr. 1028 ("that's what Stefan Lumiere would expect because that's what he believed the prices were."); Tr. 1030 ("Stefan Lumiere believed in the prices"); Tr. 1045 ("Stefan Lumiere, who went out and got broker quotes and who believed in the pricing").

   The Second Circuit has held that a conscious avoidance charge is appropriate in such circumstances.  The *Cuti* case is especially instructive given its resemblance to the instant case.  There, the Government argued that the defendant's actual knowledge of an accounting fraud could be inferred from his participation in many of the core events that furthered the fraud, including, among other things, "personally sign[ing] or approv[ing]" various agreements and participating in various meetings that advanced the fraud.  *United States* v. *Cuti*, 720 at 463.  The

defendant countered that he took all of these actions without actual knowledge of the fraud, asserting that "[t]hen and now he believed [the fraudulent transactions in which he participated] to be entirely proper."  *Id.* at 464 n.6.  The Circuit explained that the defense, in the context of the other evidence presented, provided strong justification for a conscious avoidance instruction:

> Th[e] [defendant's] purported lack of knowledge defense, despite [his] deep involvement in the transactions that effectuated the fraud, *all but invited* the conscious avoidance charge. The same evidentiary facts that supported the government's theory of actual knowledge also raised the inference that he was subjectively aware of a high probability of the existence of illegal conduct and thus properly served as the factual predicate for the conscious avoidance charge[.]

*Id.* (emphasis added); *see also United States* v. *Carlo*, 507 F.3d 799, 802 (2d Cir.2007) ("The conscious avoidance charge was appropriate because [the defendant] asserted that he did not know that his statements were false and the government presented an adequate factual predicate for the charge."); *United States* v. *Aina–Marshall*, 336 F.3d 167, 171 (2d Cir. 2003) (approving conscious avoidance charge where the defendant "admitted possession of contraband but . . . denied knowledge of its nature," because "the defendant herself has directly put in issue whether the circumstances were such as to alert her to a high probability that the goods were contraband and what steps she took to learn of the extent of that danger"); *United States* v. *Kozeny*, 667 F.3d 122,134 (2d Cir. 2011) (same).

   *Second*, Lumiere contends that the Court's instruction was improper because it deviated from the "standard instruction" and was legally flawed in several respects.  As a threshold matter, the defendant's claim is puzzling because the Court — one of the co-authors of the Sand et al. treatise — gave an instruction that was generally consistent with the standard instruction (and the instruction suggested by the Government).  *See* Sand et al., *Modern Federal Jury Instructions*

§ 3A-2 & cmt. ("Judge Rakoff's charge in a recent fraud case appears to strictly adhere to *Global-Tech* [*Appliances, Inc.* v. *SEB S.A.*, 563 U.S. 574 (2011)]").

In any event, "[s]ince the composition of jury instructions is not an exact science, many formulations may be adequate." *United States* v. *Brand*, 467 F.3d 179, 206 (2d Cir. 2006) (internal quotation marks omitted). District courts enjoy "'broad discretion' in crafting jury instructions." *United States* v. *Brand*, 467 F.3d at 206 (quoting *United States* v. *Russo*, 74 F.3d 1383, 1393 (2d Cir. 1996)). "As long as a district judge's instructions are legally correct . . . he is not required to give them in any particular language." *Joy* v. *Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993). Furthermore, all jury instructions in a given case are viewed as a whole when determining whether the issuance or refusal of a particular instruction was erroneous. *Id.*

The defendant's principal complaint is thus that the Court's instruction "focused on very fact specific factual circumstances that in themselves presented undue and unnecessary danger for the defendant." (Br. 21). Not so. The Court gave a balanced example tethered to the evidence at trial: contrasting whether the defendant "failed to do due diligence on the securities he was pricing" — which would not "support an inference of deliberate disregard of a possible fraud" — with whether the defendant "in order to remain ignored of [a] fact, deliberately chose not to inquire further" — which "may, if you wish [permit the jury to] to find that the defendant actually understood that the bond prices he gave to brokers were artificially high and did not reflect the fair market value." (Tr. 1087-87). Contrary to the defendant's suggestion, nothing about this example "impose[d] on the defendant the burden to learn 'market prices' for bonds." (Br. 22).

## CONCLUSION

For the above reasons, the Court should deny the defendant's Rule 33 motion

because he has failed to meet his burden that "the interest of justice so requires."  Fed. R. Crim.

P. 33.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    _____/s/_____

Ian McGinley
Damian Williams
Joshua A. Naftalis
Assistant United States Attorneys
(212) 637-2257 / 2298 / 2310