Case 1:16-cr-00483-JSR   Document 196-7   Filed 04/25/17   Page 1 of 45
Case 1:16-cr-00483-JSR   Document 106   Filed 02/10/17   Page 31 of 58

Lumiere, Stefan                                30                     P2537113 - Frankelis, Emily

## ADDENDUM TO THE PRESENTENCE REPORT

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## UNITED STATES V. STEFAN LUMIERE, DKT. 0208 1: 16 CR 483-01 (JSR)

## OBJECTIONS

### By the Government

At the request of the Government, the words "and higher bonuses for Lumiere" were removed from paragraph 21.

### By the Defendant

Jonathan N. Halpern, Esq. related that Lumiere acknowledges the jury's guilty verdict, and he noted that a motion for a new trial was filed with the Court and remains pending. Mr. Halpern stated that "it would not be appropriate generally to lodge objections to or otherwise address here the government's presentation of the offense conduct set forth in the PSR"; however, he submitted numerous specific objections to the presentence report, the first of which was to note that although Jason Thorell has not been charged (paragraph 8), his trial testimony was "compelled and subject to Court-ordered immunity." As the Related Cases section is simply meant to provide the name and status of any related cases, no change was made.

Because the defendant was convicted at trial, over which Your Honor presided, we defer to the Court regarding the defendant's following specific objections (paragraph numbers refer to the revised presentence report):

Paragraph 13: "Mr. Lumiere objects to the statement that he 'manage[d] approximately between $50 and $100 million of the Credit Fund's portfolio' and further objects to the statement that he 'was a portfolio manager' as a misleading characterization in the particular context. Mr. Lumiere was never a portfolio manager of the Credit Fund and never had responsibility for managing money at the Credit Fund. Chris Plaford was the Credit Funds' portfolio manager. In 2009, Mr. Lumiere worked as an analyst full time for the Credit Fund, and was identified as an analyst in 2010 in Visium's printed marketing materials. However, for most of the period from approximately 2010 to 2012, Mr. Lumiere's primary role at Visium was as a portfolio manager in connection with a small strategy (special situations investments) for Visium's Global Fund, which had nothing to do with the government's allegations or the offenses of conviction."

Paragraph 15: "Mr. Lumiere objects on several grounds to this paragraph. First, he currently is unable to confirm the figures for the return rates cited in the paragraph, and the government apparently has not provided the Probation Office with evidentiary or other documentary support. Whether the return rates are accurate or not, the paragraph is objectionable to the extent there is a suggestion that any decline in return rates in 2011-2013, or the subsequent liquidation of the Credit Fund, was caused or affected by the alleged conduct or the offenses of conviction. The government has made no such showing of causation and does not attempt to do so. Moreover, the

paragraph also is objectionable to the extent it implies that the ability or inability of Visium 'to fully redeem certain investors' was caused or affected by the alleged conduct or any offense of conviction. No apparent consideration of investment, market or industry risk or other factors has been identified."

Paragraph 21: This objection is no longer applicable due to the Government's amendment to this paragraph.

Paragraph 38: "Without waiver, Mr. Lumiere objects to this paragraph. He received no percentage of profits in connection with the Credit Fund for 2011-13 and had no management responsibilities with respect to the Credit Fund. (A non-contractual bonus was received for the year 2010 in connection with security recommendations – and nothing to do with the government's allegations or offenses of conviction.) Mr. Lumiere did he receive any bonus in 2011-13. Nor did Mr. Lumiere have a financial arrangement with Mr. Plaford or anyone else during this period with respect to the Credit Fund. Mr. Lumiere's employment contract was with Visium, entered in 2007, and his compensation from Visium was for work unrelated to the Credit Fund. China Med was not a position of Mr. Lumiere's, and he did not receive any financial or other benefit in connection with any assignment related to the Credit Fund for 2011-13. Again, Mr. Lumiere's primary responsibility was with respect to a separate sleeve in the Global Fund."

Paragraph 61: "This paragraph is objectionable for several reasons. See objection to Paragraph 15, incorporated by reference herein. No connection between any drop in return rate and the alleged conduct has been established or even attempted to be shown. Also, Mr. Lumiere had no responsibilities or role with regard to investors and did not communicate with, much less 'mislead,' investors, including on the topics of valuing and classifying the Credit Fund's assets. Indeed, Mr. Lumiere's primary role was with regard to other assignments with another fund. Furthermore, no support is offered for the claim that investors would not have invested in the Credit Fund without having been misled. The government's 'position' or 'opinion' as to investor conduct is objectionable and should be struck from the paragraph."

Paragraph 63: "Mr. Lumiere objects to the paragraph on the grounds that: the government presents a summary characterization of anonymous investors and fails to identify the investors; the government's representation as to Mr. Lumiere also is erroneous since he left employment at Visium in April 2013 (and was not working at Visium after April 2013); the government's position on broker quotes is artificially limited by the 'market prices' and values it considered. Mr. Lumiere also objects to the undefined term 'prevailing market.'"

Paragraph 64: "Mr. Lumiere objects to the paragraph with respect to the dollar amount and percentage ascribed to the mismarking of bonds on the 'Override List,' objects to the calculation and measure of the alleged mismarked bonds; objects that the government has not identified supporting documentation; and further objects to the statement that the prices for the bonds were markedly higher than those 'as determined by publicly available pricing sources.'"

Paragraph 65: "Mr Lumiere objects to this paragraph on several grounds. The fees attributable to alleged mismarking are overstated. The government has failed to establish the amount of fees attributable to the alleged scheme. Moreover, the reported management fees appear to be inconsistent with (and significantly overstate) those reflected in GX 18 for the six quarters in

2011-12. Paragraph 65 also is objectionable on the grounds that its assumptions and positions regarding alleged mismarking and corresponding amounts attributable to the mismarking are overstated or otherwise erroneous. The government also has not met its burden of production with regard to documented evidentiary or factual support for Visium's actual assessment of fees and the investors' payment of them. For example, purportedly mismarked (and inflated) values arising from an alleged 'painting the tape' scheme cannot be sustained, and therefore corresponding fees earned from those values do not constitute 'loss.'"

Paragraph 66: "This paragraph is objectionable because the government has not explained or proved the claimed loss or the 'victims' it identifies by name in Paragraph 69. See objections to Paragraphs 69 and 77, incorporated herein by reference. The limited charts produced and trial testimony identified by the government [on April 4, 2017] – outside the PSR – after multiple requests for explanations and information (VAM 00086664 and VAM 00086665) raise more questions than answers regarding loss and victim status. Nor is the 'Government's position' a legally adequate substitute for evidentiary or factual support. No consideration was given to a variety of factors; only a generalized claim has been provided."[2]

Paragraph 69: "Paragraph 69 is objectionable for multiple reasons. The government has failed to prove the losses cited or that the entities identified qualify as loss victims. Paragraph 69 reflects entities the government identifies as victims along with their purported actual losses on investment. A conclusory identification, without more, is legally inadequate. The Sentencing Guidelines define '[a]ctual loss' to mean the 'reasonably foreseeable pecuniary harm that resulted from the offense.' U.S.S.G. Section 2B1.1, comment (n.3(A)(i)). In sentencing, 'the government's burden is to establish material and disputed facts by the preponderance of the evidence.' United States v. Streich, 987 F.2d 104, 107 (2d Cir. 1993). The district court must find the facts relevant to a sentencing enhancement by a preponderance of the evidence. See United States v. Hertular, 562 F.3d 433, 447 (2d Cir.2009). United States v. Mi Sun Cho, 713 F.3d 716, 722 (2d Cir. 2013) 'In the context of sentencing, if the government seeks increased punishment, it has the burden of proving that the circumstances warrant such an increase.' United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

"In the context of fraud, '[t]he loss must be the result of the fraud.' United States v. Ebbers, 458 F.3d 110, 128 (2d Cir. 2006) (explaining that '[l]osses from causes other than the fraud must be excluded from the loss calculation'). Although a 'court need only make a reasonable estimate of the loss,' (U.S.S.G. § 2B1.1 cmt. 3(C)), its determination must nevertheless be 'legally acceptable.' United States v. Rutkoske, 506 F.3d 170, 178 (2d Cir. 2007); see also United States v. Ferguson, 584 F. Supp. 2d 447, 451 (D. Conn. 2008) ('[T]he district court's estimate must be grounded in sound economic principles').

---

[2] The Government related that its theory of loss is supported by United States v. Balboa, 622 Fed.Appx. 31 (2015). Balboa was convicted and sentenced to 48 months of imprisonment for conspiracy to commit securities fraud, securities fraud, conspiracy to commit wire fraud, wire fraud, and investment advisor fraud. He challenged the loss determination, which was based on the total sum of money that victims of Balboa's scheme were fraudulently induced to invest in the Hedge Fund. The Appellate Court cited (among other things) United States v. Stitsky, 536 Fed.Appx. 98, 112 (2d Cir.2013) – "'[T]he district court reasonably determined that no offset was warranted for losses resulting from changed economic circumstances because ... investors would not have been exposed to such risks had defendants not fraudulently induced them to invest in the first instance.'" – and the judgment of the District Court was affirmed.

"In criminal cases involving sentencing for securities fraud, the Second Circuit, like the Fifth and Tenth Circuits, has referenced economic principles that guide loss calculation in civil cases. *See Rutkoske*, 506 F.3d at 179; *see also United States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005); *United States v. Nacchio*, 573 F.3d 1062, 1078–79 (10th Cir. 2009). The *Rutkoske* court, for example, cited guidance from the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), where the court observed that 'a plaintiff must prove the misrepresentation proximately caused the economic loss.' *Dura*, 544 U.S. at 346. In *Rutkoske*, the court remanded the case for sentencing based on '[t]he District Court's basic failure at least to approximate the amount of loss <u>caused by the fraud without even considering other factors relevant to a decline [of the securities' price]</u>.' *Rutkoske*, 506 F.3d at 180 (emphasis added) (district court's 'basic failure' to approximate amount of loss caused by fraud 'without even considering other factors relevant to a decline in [] share price requires a remand'); *see also Ferguson*, 584 F. Supp. 2d at 453 (same). *See, e.g., United States v. Gushlak*, 728 F.3d 184, 197 (2d Cir. 2013) (regarding restitution loss). In *Gushlak*, the Second Circuit underscored the importance for the trial court in investor 'loss' cases where 'quantitative analysis, relying as it does on sophisticated principles of corporate finance and statistics, is hardly the stuff of ordinary judicial expertise. Courts therefore can and ordinarily do rely on the testimony of one or more experts for one side to establish a statistical model, and one or more on the other side to bring to the court's attention the ways in which that model may be unsound, and, if necessary, propose a viable alternative.' *Id*.

"In *Ebbers* and other cases, the court could not rule out non-fraud factors that led to the decline in the securities' price. *Rutkoske*, 506 F.3d at 179; *Ferguson*, 584 F.Supp. 2d at 452; *see also United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008) (district court erred in not deducting from the purchase price of certain securities the actual value of the instruments <u>despite the finding that the plaintiffs would not have invested in the securities if not for the defendant's misrepresentation</u>).

"Here, the government utterly fails to come close to satisfying its burden under the Guidelines and under the case law. For example, it provides no explanation for how the losses are computed, much less an explanation as to how the entities in fact qualify as victims or investors in the Credit Fund (or even as investors in Visium at all). The government also has failed to explain, in the first instance, whether there are losses at all, and if so, the extent to which degree they were caused by the offenses of conviction. There is no mention of market or industry factors or how they were taken into account in the government's determination.

"Nor is there mention of the risk level disclosed to the investor for the particular fund or the performance of any particular investment or category of investments. No comparison is offered for other hedge funds or asset management funds with investment portfolios similar to that of Visium's Credit Fund. Moreover, especially with respect to the Credit Fund, the hedge fund investments assume greater risk. Any loss, no matter how much or little, may well have nothing or little to do with any offense of conviction. The government has failed to prove otherwise. For example, the trial testimony by government witnesses Vasiliadis and Carl as to the losses their respective funds sustained as Credit Fund investors is irrelevant. It was presented without objection, but does not even purport to reflect any connection to the government's allegations or offenses of conviction. The government's begrudging production (outside the PSR) of charts reflecting dates and original contributions also does not explain the loss computations put forth. '[T]he Government's position that none of these investors would have invested in the Credit

Fund had they known about the fraud' (Paragraph 66) is legally and factually insufficient to establish loss or victim status.

"Nor does the government address issues regarding the timing of the Credit Fund's winding down or reasons for it, including what redemptions were requested, when they were paid and the effect of such matters on investors' investments. Nor does it address the effect of the classification or shift in levels 1, 2, and 3 of the Credit Fund's securities on investment and risk.

"In addition, the unilateral and conclusory summary of loss differs from the theory of loss attributable to the offenses of conviction that the government presented at trial, which generally pertained to purported management and performance fees.

"The government's resistance, inability or failure timely to provide the Probation Office and the defendant with complete, accurate and comprehensive explanations, as well as the bases for its loss and victim claims works an unfair prejudice on the defendant. Such production would be expected to include facts, assumptions, theories, expert reports and any documented supporting evidence. In any event, the government has failed to meet its fundamental burden of production, much less of proof. As a result, no loss has been shown, and no loss enhancement is warranted."

Paragraph 76: "Mr. Lumiere objects to Paragraph 76 for the reasons set forth in objections to Paragraphs 69 and 77, both incorporated herein by reference. The government has failed to establish loss – and the amount claimed – and failed to account for various factors unrelated to the government's allegations or offenses of conviction in providing a sum total amount. The loss amount also substantially overstates Mr. Lumiere's involvement with respect to the Credit Fund, including his status, compensation, role, incentive or non-incentive (financial and otherwise) and motivation, if any, of Mr. Lumiere. This is especially so under the circumstances, in comparison to Plaford, Thorell and other participants in the alleged conduct –whether charged, uncharged or immunized."

Paragraph 77: "Mr. Lumiere objects because the government has failed to establish that the entities identified qualify as 'victims' who sustained losses from one or more offenses of conviction. Moreover, it has failed to establish 10 or more qualifying victims. *See also* objections to Paragraphs 69, [146], [150], [151], all of which are incorporated by reference herein."

Paragraph 78: "Mr. Lumiere objects to this paragraph and the four-level enhancement under USSG. Section 2B1.1(b)(19)(A)(iii) because he was not an 'investment adviser' and because the specific offense characteristic is misapplied to the offenses of conviction for Mr. Lumiere and overstates his limited conduct with respect to the Credit Fund. He does not qualify under the statutory definition of 15 U.S.C. Section 80b-2 (a)(11). Mr. Lumiere did not, in connection with the Credit Fund, for compensation, engage in the business, directly or through publications or writings, as to the value of securities or advisability of investing or trading in securities. As noted with respect to the objection to Paragraph 13, he received no compensation, bonus or benefit for work or assignments involving the Credit Fund from 2011 to 2013.

"Mr. Lumiere also did not engage in the business of advising others on valuing or advising on securities for compensation. Indeed, his job did not entail customer or investor advisory work or other contact. The relatively limited involvement with the Credit Fund and the overall facts and

circumstances more strongly militate <u>against</u> application of this specific offense characteristic than, for example, in *United States v. Regensberg*, 645 F. Supp.2d 306 311-12 (S.D.N.Y. 2009), in which the court rejected application of the enhancement. There, the defendant 'was to receive a percentage of the profits, if any, that an investor garnered from his or her investment.' *Id*. While the court acknowledged that the defendant may have discussed 'with his victims' the comparative risks of two investment products, the court determined that he received no compensation for the advice. In this case, Mr. Lumiere did not discuss with or contact investors or clients to review valuation, pricing or investment strategies – and he received no compensation in connection with the Credit Fund for the period in question. The enhancement is not intended to apply under these particular circumstances; it overstates and unfairly extends Mr. Lumiere's conduct with regard to the Credit Fund and is inapplicable. The enhancement is not warranted."

<u>Paragraph 145</u>: "The paragraph is objectionable because it is based on overstated and unsupported offense levels, including a 20-level increase for loss, that have not been established. For reasons stated herein, including in objections to Paragraphs 69 and 77, incorporated herein by reference, the government has failed to substantiate or explain the claimed loss or apparently to take into account a multitude of factors courts consider in determining the losses, if any, in such investor cases. Applying the Guidelines for Mr. Lumiere should yield offense levels within Zone A or Zone B, rendering Mr. Lumiere eligible for a probationary sentence in accord with the Guidelines."

<u>Paragraph 146</u>: "Mr. Lumiere objects to applying the alternative fine provision (18 U.S.C. Section 3571(d)) to any fine for him. He 'derived [no] pecuniary gain from the offense[s]' and no 'pecuniary loss to a person other than the defendant' has been established, and, further, 'impos[ing] a fine under this subsection would unduly complicate or prolong the sentencing process.' *See also* objections to Paragraphs 69, [150], [151], all incorporated by reference herein."

<u>Paragraph 148</u>: "The Sentencing Guideline fine range is objectionable because it is based, at least in part, on an overstated and therefore erroneous offense level (33) that yields an incorrect fine range. For example, an offense level of 7 yields a minimum fine of $500. U.S.S.G. Section 5E1.2(h)(1)."

<u>Paragraph 150</u>: "Restitution is inapplicable here. The government has failed to establish any identifiable victims for loss or restitution amount with respect to any of the offenses of conviction involving the Credit Fund. Based on the information the government provided and, more important, the information it failed to provide, the 'list of victims' and corresponding loss amounts are hollow categories for which restitution has not been proved or rendered applicable. The government also has failed to demonstrate that any identified victim entities satisfy the statutory definition of 'victim' as a 'person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered….' 18 U.S.C. Section 3663A (a)(2). *See* objections to Paragraphs 69 and [151], which are incorporated by reference herein."

<u>Paragraph 151</u>: "U.S.S.G. Section 5E1.1 is inapplicable because this case lacks 'an identifiable victim' that the government has proved. Further, in light of the absence of credible support to establish losses proximately caused by the offenses of conviction, and the nature of the matter,

the process of calculating loss, if any, may well implicate impermissibly complex issues that would so complicate or prolong the sentencing process that the need for restitution to any victim would be outweighed by the attendant burdens. U.S.S.G. Section 5E1.1(b)(2)(B). *See* also objections to Paragraphs 69 and [150], which are incorporated by reference herein."

Paragraph 152: "The paragraph is objectionable, as forfeiture is not applicable in this case. Mr. Lumiere is not subject to forfeiture in this case based on the law and the facts. He received no proceeds traceable to the commission of the offenses alleged in Counts 1 thought 3 of the Indictment and derived no property from such proceeds, and substitute assets are inapplicable under the circumstances. Mr. Lumiere had a fixed salary, based on his original contract with Visium Asset Management as a portfolio manager in connection with the Balance Fund, and also worked as a portfolio manager (including distressed portfolio and special situations) for the Global Fund, but received no compensation or any property relating to the Credit Fund for 2011 through 2013. *See also* objection to Paragraph [153], incorporated by reference herein."

Paragraph 153: "The notice and inclusion in the judgment provision of Rule 32.2(b)(4)(B) is inapplicable here. Mr. Lumiere further objects to forfeiture based on the protections of Rule 32.2. The government has not specified property or asserted whether it seeks a personal money judgment – or the legal or evidentiary bases for forfeiture as to Mr. Lumiere – and the court has not 'determine[d] what property is subject to forfeiture under the applicable statute.' Mr. Lumiere further objects that, to the extent the government has not already waived forfeiture or still does not decline to pursue a forfeiture order, there has not been, and Mr. Lumiere has not received timely notice of, a forfeiture determination as to the property (or substitute property) alleged or deemed subject to forfeiture. Moreover, the government has failed to identify the evidence supporting its forfeiture claim for any forfeiture determination. In the event the government has not abandoned its claim for forfeiture, identification of assets and supporting evidence is warranted immediately as well as a hearing. Moreover, any preliminary order to be entered is untimely. Rule 32.2(b)."

Additional information provided by defense counsel resulted in changes to the following paragraphs: 96, 99, 101, 103, 105, 106, 108 through 113, 115, 116, 120, 130, 131, 135, 157, and 158.

In reference to paragraph 118, defense counsel reported that "Mr. Lumiere's psychiatrist has also stated that he has a character trait resulting in an unquestioning, uncritical and overly trusting nature." This was not included in the information Maia Mamamtavrishvilli, MD provided to this probation office; therefore, no change was made.

## REVISIONS

Paragraph 119 was amended to include information received from Dr. Mamamtavrishvilli.

Paragraph 126 was revised due to the receipt of records from Tulane University.

Paragraph 131 was amended to reflect information provided by Visium Asset Management.

Receipt of the defendant's personal financial statement resulted in the revision of paragraphs 102 and 132, the addition of the charts that follow 132, and the addition of paragraphs 133 and 134.

Case 1:16-cr-00483-JSR Document 106-7 Filed 04/25/17 Page 38 of 45
Case 1:16-cr-00483-JSR Document 96-73 Filed 04/05/17 Page 8 of 8

Lumiere, Stefan                              37                    P2537113 - Frankelis, Emily

Information received from the IRS was included in paragraph 136.

                         Respectfully Submitted,

                         Michael J. Fitzpatrick
                         Chief U.S. Probation Officer

By:    Emily P. Frankelis
       USPO Specialist

Approved:

Thomas J. McCarthy    4-12-17
SUSPO