UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA

Case No. 16-CR-00483 (JRS)

-v.-


STEFAN LUMIERE,

Defendant.

-----------------------------------------------------------------X


**<u>DEFENDANT'S SUPPLEMENTAL SENTENCING SUBMISSION</u>**




FOLEY & LARDNER LLP


Jonathan N. Halpern, Esq.
Jonathan H. Friedman, Esq.
90 Park Avenue
New York, New York 10016
Date:  June 13, 2017


*Attorneys for Defendant Stefan Lumiere*



**ATTORNEYS AT LAW**

90 PARK AVENUE
NEW YORK, NY  10016-1314
212.682.7474 TEL
212.687.2329 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
212.338.3650
jhalpern@foley.com EMAIL

CLIENT/MATTER NUMBER
115662-0101

<u>Vɪᴀ ECF</u>

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

          Re:  <u>United States v. Stefan Lumiere</u>
             16 Cr. 483 (JSR)

Dear Judge Rakoff:

We respectfully present this supplemental submission on behalf of defendant Stefan Lumiere in connection with his sentencing, scheduled for June 14, 2017.

Forfeiture

In light of the Supreme Court's opinion in *Honeycutt v. United States*, 581 U.S. ___ (2017), issued June 5, 2017, forfeiture is inapplicable to Mr. Lumiere. In *Honeycutt*, the Court reversed the Sixth Circuit and held that forfeiture under 21 U.S.C. Section 853(a)(1) was improper because the defendant did not actually acquire property as the result of the crime. *Id.* at 11. In so doing, the Court rejected the position that the forfeiture statute "countenance[s] joint and several liability, which, by its nature, would require forfeiture of untainted property." *Id*. at 5. Among other reasons, the Court stated that Section 853(p), which the Government relies on in this case, does not authorize confiscation of substitute assets from other defendants or co-conspirators. *Id*. at 9.

In this case, pre-*Honeycutt*,[1] the Government requested forfeiture of untainted property from Lumiere, in the form of $2,622,709 in performance fees paid to Visium and co-conspirators (based on GX 18, at 35). Dkt. No. 98, at 13.[2] While not establishing that Lumiere received any

---

[1]  In telephone conversations yesterday and earlier today, the Government informed us that its position as to how *Honeycutt* should apply in this case has not yet formed.

[2]  The Government alternatively seeks forfeiture in the amount of Mr. Lumiere's approximate salary of $200,000. Mr. Lumiere was employed under an employment agreement with Visium Asset Management.  *See* Dkt. No. 98, at 12, Ex. A.  As discussed, Mr. Lumiere was primarily engaged in his position at Visium's Global Fund in 2011 and 2012, and his limited assignments in the Credit Fund were in his role as an analyst. Chris Plaford was the sole portfolio manager, who had control over Credit Fund investment and other issues, including deciding positions and

profits or proceeds from the scheme -- he has not -- the Government had been pursuing forfeiture from Lumiere under the legal theory that a defendant can nonetheless be ordered to "forfeit proceeds received by others who participated jointly in the crime." Dkt. No. 98 at 13, citing *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012). The Government asserted that "the property at issue was under the control of Visium and Plaford, one of Mr. Lumiere's co-conspirators" and that forfeiture still could be ordered even if the defendant did not profit from the scheme. Dkt. No. 98, at 13.

Similarly, in this case, unlike Chris Plaford and others at the Credit Fund and Visium, Lumiere received no bonuses, fees, profits or proceeds in connection with the scheme. Plaford acknowledged that he did not give Lumiere a bonus (Tr. 786), and that Gottlieb and the others on the [C]redit team received the performance fee.  (Tr. 653). However, Plaford did not testify as to the amount of the performance fee awarded for scheme conduct or when it was paid. Suggesting the ongoing challenges of determining the amount of the proceeds at issue, Plaford testified that he would "certainly do [his] best to . . . forfeit to the government all the proceeds that are determined [he] made from this crime." (Tr. 778); *see also* Lumiere Sentencing Memorandum, Dkt. No.101, at 3, 49-50.

In *Honeycutt*, at sentencing the Government requested a money judgment against the defendant in the amount of the conspiracy profits that remained outstanding after the co-defendant's forfeiture payment. The District Court, whose ruling ultimately was vindicated by the Supreme Court, declined to enter a forfeiture judgment on the grounds that the defendant was "a salaried employee who had not personally received any profits from the [illegal scheme]." *Id*. at 3.

The Supreme Court first identified the objectives and "important governmental interests" underlying criminal forfeiture statutes: "separating a criminal from his ill-gotten gains;" "returning property, in full, to those wrongfully deprived or defrauded of it;" and "lessen[ing] the economic power" of criminal enterprises. *Id*. at 3 (citations omitted). Turning to its review of Section 853(a), the Court, in its 8-0 ruling, determined that the statute limits forfeiture to "tainted property." *Id*. at 5. For example, Section 853(a)(1) limits forfeiture to "property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the crime. *Id*. Declining to extend forfeiture to "untainted assets," the Court held that joint and several liability would run afoul of the statute's "restriction of forfeiture to tainted property." *Id*. Limiting "forfeiture to property the defendant 'obtained . . . as the result of'" the crime led the Court to conclude that the statute's definition of forfeitable property was directed to "personal possession or use." *Id*. at 5-6.

The Supreme Court also rejected joint and several liability for forfeiture under Section 853(p), the same provision that the Government cites in the indictment as the basis for seeking

---

trading prices to take in particular securities. (Lumiere Sentencing Memorandum at 4.)  *See, e.g.,* Defense Objection to PSR, paragraph 13 (setting out Lumiere's limited role as an analyst at the Credit Fund and his separate role as a portfolio manager -- one of approximately thirteen portfolio managers -- in the Global Fund). *See* Ex. A, Visium Global Fund Presentation dated March 2012, at 12-14. Accordingly, to the extent other assertions in the PSR (including paragraphs 15, 21, 26, 28, 29 and 58) or elsewhere state or suggest enhanced roles or responsibilities in the Credit Fund for Mr. Lumiere, they are erroneous and objectionable.

forfeiture of substitute assets. *See* Indictment, Forfeiture Allegation at 15-16. Section 853(p) applies to "substitute property," but is limited, among other factors identified in Section 853(p)(A)-(E), to the "property described in subsection (a)," which includes: "property constituting, or derived from <u>any proceeds the person obtained, directly or indirectly,</u> as the result of" the crime.  21 U.S.C. Section 853(a)(1) (emphasis added).  The Court made clear from its review of Section 853(p)(1) that the Government was statutorily precluded from "confiscat[ing] substitute property from other defendants or conspirators," instead permitting forfeiture of "assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation." *Id*. at 9. Indeed, the Court held that to permit the "Government to force other co-conspirators to turn over untainted substitute property would allow the Government to circumvent Congress' carefully constructed statutory scheme . . . ." *Id*. The *in personam* and substitute forfeiture provisions of the statute support the Congressional intent of holding "the defendant who acquired the tainted property responsible." *Id*. at 10. Accordingly, no order of forfeiture is appropriate in this case.

<u>Additional Character Letter on Behalf of Stefan Lumiere</u>

Attached as Exhibit B is an additional character letter, dated June 1, 2017, submitted by Reed Jones in support of Mr. Lumiere in connection with his sentencing.

<u>Defense Objections to PSR</u>

As mentioned at the sentencing proceeding on May 31, 2017, attached as Ex. C is a redacted copy of the defense's objections to the Probation Office's Pre-Sentence Investigation Report, which had been submitted and served on the Government on April 5, 2017.

<u>Filed Tax Returns:  2014-2016</u>

Mr. Lumiere has filed income tax returns for 2014, 2015 and 2016, the filing of which is not reflected in the PSR when it was issued to the parties.

Dated:  June 13, 2017                                    Respectfully submitted,
      New York, NY

                                               FOLEY & LARDNER LLP

                                               /s/ Jonathan N. Halpern
                                               Jonathan N. Halpern (jhalpern@foley.com)
                                               Jonathan H. Friedman (jfriedman@foley.com)
                                             90 Park Avenue
                                             New York, NY 10016
                                             (212) 682-7474